UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Gilberto LeClerc,

                Petitioner,           CV-06-3708
                                     (CPS)(CLP)

   - against -                      MEMORANDUM OPINION
                                     AND ORDER

United States of America,

                Respondent.

-------------------------------------X

SIFTON, Senior Judge.

On November 21, 2003, petitioner Gilberto LeClerc and Pedro
Perez were indicted on one count of conspiracy to import MDMA
("ecstasy"), one count of attempted importation of MDMA and one
count of importation of MDMA.  Petitioner pled guilty pursuant to
a plea agreement on February 4, 2004 and was sentenced to 97
months in prison on April 22, 2004.  Petitioner now moves this
Court, pursuant to 28 U.S.C. § 2255, for re-sentencing due to
ineffective assistance of counsel during the plea bargaining
process.[1]  For the reasons set forth below, petitioner's
application is denied.

## Background

The following facts are drawn from the record of

---

[1] Petitioner also moved for discovery of his trial counsel's files
relating to this case.  Prior to the hearing on this application, trial
counsel provided files to petitioner's counsel on this petition and, although
that counsel has noted in his post-hearing brief that the files appear
incomplete, he has not made any showing that additional files in fact exist.
Accordingly, the motion for further discovery is denied.

petitioner's criminal case, the submissions of the parties in
connection with this motion and, to the extent that those
submissions raised disputed factual issues, the hearing held
before the undersigned on June 5, 2007.

On November 21, 2003, petitioner and co-defendant Pedro
Perez were charged with conspiracy to import MDMA, attempted
importation of MDMA, and importation of MDMA.

Petitioner was originally represented by Federal Defender
Michael Schneider.  On December 19, 2003, the government made a
plea offer to petitioner, in which the government estimated that
petitioner's likely adjusted offense level under the Sentencing
Guidelines would be 32.  The plea agreement also provided that if
petitioner pled guilty prior to January 9, 2004, the government
would move for an additional one-level reduction of his offense
level pursuant to U.S.S.G. § 3E1.1(b) of the Sentencing
Guidelines for timely acceptance of responsibility.[2]  Petitioner
was told by Mr. Schneider that the agreement exposed him to
imprisonment for at least ten years. Transcript of Hearing, p. 36

---

[2] U.S.S.G. § 3E1.1(b) states that:

If the defendant qualifies for a decrease under subsection (a)
[for acceptance of responsibility], the offense level determined
prior to the operation of subsection (a) is level 16 or greater,
and upon motion of the government stating that the defendant has
assisted authorities in the investigation or prosecution of his
own misconduct by timely notifying authorities of his intention to
enter a plea of guilty, thereby permitting the government to avoid
preparing for trial and permitting the government and the court to
allocate their resources efficiently, decrease the offense level
by 1 additional level.

(June 5, 2007) ("Transcript"). Petitioner did not sign this plea offer because, according to him, he did not want to accept the ten year sentence. Transcript, p. 37.

Petitioner subsequently retained Patrick Brackley, who was substituted for Mr. Schneider on January 16, 2004. According to Mr. Brackley, he was retained because petitioner felt the prison sentence contemplated in the original plea agreement was "too high;" petitioner felt "he was not being well-represented by Mr. Schneider, because he [Schneider] wanted him to plead guilty to ten years when he did not want to do that." Transcript, pp. 12, 14.[3] According to Mr. Brackley, petitioner indicated that he would be willing to plead guilty, but only if he received significantly less time than ten years. Transcript, p. 15. Petitioner confirms that he hired Mr. Brackley to negotiate a plea agreement and that he had no intention of going to trial, but states that Mr. Brackley said "he would do his best to get me six years in prison." Transcript, pp. 39, 44.

Trial was originally set for January 26, 2004. At the request of Mr. Brackley, the trial was adjourned to February 17,

---

[3] According to Mr. Brackley, petitioner spoke "significant English" but he "always needed an interpreter" and, although Mr. Brackley initially said he thought petitioner could read English, he conceded that he did not know if that was the case. Transcript, p. 16. According to Mr. Brackley, on a number of occasions, he spoke to petitioner by phone without an interpreter. Transcript, p. 17. Petitioner states that he speaks, reads and writes in Spanish only, confirms that whenever he spoke to Mr. Brackley in person there was an interpreter present and denies ever speaking to Mr. Brackley by phone. Transcript, pp. 35, 38. Petitioner's girlfriend testified at the hearing that petitioner speaks, reads and writes in Spanish only. Transcript, p. 48.

2004.

On January 16, 2004, the government offered petitioner a new
proposed plea agreement.  In that proposed agreement, the
government again estimated that petitioner's likely adjusted
offense level under the Sentencing Guidelines would be 32.  The
second plea agreement stated that if petitioner and Mr. Perez
both pled guilty on or before January 26, 2004, the government
would move the Court, pursuant to § 3E1.1(b), for an additional
one-level reduction for timely acceptance of responsibility.
According to Mr. Brackley, several times during discussions about
this global plea agreement, petitioner expressed a "very strong
concern . . . [that] he did not take a plea without taking a plea
at the same time as Mr. Perez, because he did not want Mr. Perez
to believe that he was cooperating against him . . . . under all
circumstances, [he] would not take a plea unless he and Mr. Perez
did it together." Transcript, pp. 19, 20.  According to Mr.
Brackley, he recommended "numerous times" that petitioner plead
guilty to the indictment without any agreement with the
prosecution, which would have allowed petitioner to get the
additional one-level reduction for timely acceptance of
responsibility without having to waive his right to appeal.
Transcript, pp. 20, 29, 31.  According to Mr. Brackley, he
specifically told petitioner that if he pled guilty to the
indictment without any plea agreement, he would not be

cooperating with the government but petitioner remained concerned about what Mr. Perez would think. Transcript, p. 21. Petitioner denies ever indicating that he was concerned about what Mr. Perez or others would think if he pled guilty without Mr. Perez, states that Mr. Brackley never told him he had the choice of pleading guilty without a plea agreement and that, if Mr. Brackley did explain any of the benefits of accepting the plea offer or pleading guilty without an agreement, he "didn't understand anything." Transcript, pp. 40, 45-46. According to petitioner's affidavit, had he been advised that there was "no significant benefit" in taking the plea offer, he would have pled guilty to the indictment sufficiently in advance of the trial date to obtain the additional reduction in his offense level for timely acceptance of responsibility and retain the right to appeal. Petitioner's Affidavit, ¶ 8.

Neither petitioner nor Mr. Perez pled guilty by the January 26 deadline and Mr. Brackley did not request an extension of the deadline from the government because, according to him, the government's position was that "it would not get any better, and it's either take the plea or go to trial. So an extension of time for them to consider that wasn't really the issue. It was [that Mr. Brackley and Mr. Perez's attorney] did not want it to get any worse. . . . We're trying to . . . do the best we could at that point to aid our clients in resolving the matter, but an

extension wasn't an issue for us at that time." Transcript, p. 28.

On February 4, 2004, both petitioner and Mr. Perez pled guilty pursuant to a new plea agreement dated February 4, 2004. In that third plea agreement, the government again estimated that petitioner's likely adjusted offense level under the Sentencing Guidelines would be 32. However, the government did not offer to move for an additional one-level reduction for timely acceptance of responsibility. According to Mr. Brackley, petitioner "recognized that it was a plea or trial, and I believe understood that at that point there was going to be no reduction and, in fact, it would only get worse" and accordingly decided to take the plea bargain. Transcript, p. 26. According to petitioner, Mr. Brackley never discussed any of the terms of the agreement with him before his appearance before the Magistrate Judge, not even the number of years he could receive under the new agreement, nor did he translate the agreement into Spanish. Transcript, pp. 41, 45.[4]

At the plea allocution that same day before the Magistrate Judge, petitioner informed the Court *inter alia* that he had

_____

[4] Although petitioner's affidavit, which was originally filed on his direct appeal to the Second Circuit, states that Mr. Brackley also failed to inform him that he was receiving "no significant benefit" for waiving his right to appeal in the plea agreement he ultimately accepted and that had he been so informed he would have pled guilty without an agreement, petitioner has not raised that issue in this petition, focusing entirely on Mr. Brackley's advice during the period the global plea was available. Petitioner's Affidavit, ¶ 9-10.

discussed the plea agreement with his attorney, that he understood the plea offer, and that he was satisfied with the assistance provided by his attorney.  He was also advised of the maximum sentence he faced and of the government's estimate of his sentencing guidelines.  He then pled guilty to the charge of conspiracy to import MDMA.  The Magistrate recommended that I accept the plea, which I did.  During the proceedings before the Magistrate, Mr. Brackley reserved the right to argue at sentencing that petitioner should receive an additional one-level reduction for acceptance of responsibility, acknowledging that a denial of that reduction would not furnish the basis for withdrawing the plea.

Petitioner was sentenced on April 22, 2004.  Based on a total offense level of 30,[5] as calculated in the pre-sentence report, and a criminal history category of I, petitioner faced a range of 97 to 121 months imprisonment, with 3 years of supervised release and a fine of $15,000 to $1,000,000.  In a letter to this Court, and at oral argument, Mr. Brackley argued that petitioner was entitled to the additional one-level reduction under § 3E1.1(b) since he had indicated his willingness to accept the January 16 plea offer but was unable to do so due to the requirement of a global plea agreement and the fact that

---

[5] The revised offense level was the result of a mistaken assumption by the government regarding the amount of MDMA involved.

Mr. Perez had not pled guilty by the deadline.  The government
agreed that petitioner had initially indicated a willingness to
accept the January 16 plea offer but noted that Mr. Brackley
subsequently informed the government lawyer that petitioner would
probably be going to trial since Mr. Perez was unable to reach an
agreement with the government about modifications to the plea
agreement.  The government further noted that petitioner was not
offered, nor had he sought, an extension of the January 26
deadline, and that petitioner had been free to plead guilty to
the indictment without any agreement.  According to the
government's sentencing letter, since the government was forced
to prepare for trial due to the petitioner's having declined to
plead guilty either to the indictment or the plea offer by
January 26, petitioner was not entitled to any additional
reduction in his offense level.

I sentenced petitioner to 97 months in prison based on an
offense level of 30.  In so doing, I noted that since the
government did indeed begin trial preparations, the additional
one-level reduction was not appropriate.

Petitioner appealed the sentence.  Mr. Brackley initially
represented petitioner on this appeal but, at Mr. Brackley's
request, he was relieved as counsel on December 3, 2004 by the
Second Circuit.  The Second Circuit dismissed the appeal on
October 18, 2005 on the grounds that petitioner had waived his

right to appeal in his plea agreement.   Petitioner then filed the present petition.

Petitioner argues in his petition that Brackley provided him with ineffective assistance (1) by failing to recommend that petitioner plead guilty without an agreement and (2) by failing to seek an extension of time from the government to enable petitioner to accept the January 16 offer.

## Discussion

In the context of guilty pleas, "ineffective assistance of counsel may render a guilty plea involuntary, and hence invalid. An accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by that plea because a plea of guilty is valid only if made intelligently and voluntarily." *U.S. v. Couto*, 311 F.3d 179, 187 (2d. Cir. 2002) (internal citations and quotations omitted).

In *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985), the Supreme Court applied the traditional two-prong test for ineffective assistance set out in *Strickland v. Washington*, 466 U.S. 668 (1984), to guilty pleas.   To prevail on a claim of ineffective assistance counsel with respect to a failure to plead guilty, petitioner must demonstrate both that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would

have insisted on going to trial." *Hill*, 474 U .S. at 57-59.[6]

I.  Failure to Recommend Pleading to Indictment

Petitioner claims that Mr. Brackley did not recommend
pleading to the indictment without an agreement.  However, having
observed the testimony of Mr. Brackley and that of petitioner,
both on direct and cross-examination, I conclude that Mr.
Brackley did inform petitioner regarding the option of pleading
guilty to the indictment without any agreement with the
prosecution and that petitioner rejected the option out of
concern for what Mr. Perez would think if he pleaded guilty
before Mr. Perez.

In challenging Mr. Brackley's credibility, petitioner notes
inconsistencies in Mr. Brackley's testimony and argues that those
inconsistencies establish that Mr. Brackley was lying in order to
avoid blame for his ineffective assistance.  The inconsistencies
to which petitioner refers are minor and not persuasive on the
issue of whether Mr. Brackley lied in testifying that he told
petitioner that he could plead guilty without a plea agreement.
For example, petitioner notes that the government's initial brief
states that Mr. Brackley told Assistant United States Attorney
Mackay that petitioner did not want to be perceived "'on the
street'" as prejudicing his co-defendant, Government Initial

---

[6] Petitioner argues that the *Hill* standard of "would have insisted on
going to trial" does not apply to petitioner's situation.  Due to the
determination made below, I need not decide that issue.

Brief, p. 14, while at the hearing, Mr. Brackley said he never heard the petitioner use the term "on the street." Transcript, pp. 21-22. As another example, petitioner notes that at the hearing, Mr. Brackley initially stated, in response to questions from petitioner's counsel, that he told Mr. Mackay that he "would consider" signing an affidavit if the government sent him one. Transcript, pp. 10-11. Later during the hearing, in response to a question from the government, Mr. Brackley stated that, "I think [the government] probably - you wanted a statement from myself. You wanted me to write a statement." Transcript, p. 33. Neither of these statements contradict the other.

Somewhat more to the point, petitioner notes that at the hearing Mr. Brackley testified that the reason he asked for the additional one-level reduction was because it seemed "unfair" that his client could have pled to the indictment and received the additional point off but lost the point solely because he refused to do so. In fact, the "unfairness" Brackley pointed to at sentencing was the prosecutor's insistence on a global plea agreement.[7]

Petitioner also argues that Mr. Brackley's post-plea conduct demonstrates that Mr. Brackley has attempted to conceal his

---

[7] At sentencing, Mr. Brackley in fact referred to the possibility of pleading to the indictment, when he said that there was nothing he could do after the global plea had been offered "except plead to the indictment but it was a global plea anyway and I had no wiggle room so to speak." Transcript of Sentencing, p. 11.

ineffectiveness, thereby establishing that his conduct was
ineffective.  In this connection, petitioner points first to Mr.
Brackley's failure to respond to letters from petitioner's
present counsel inquiring why petitioner did not plead guilty to
the indictment.  Transcript, pp. 22-23.[8]  Mr. Brackley also
failed to meet or speak with petitioner's appellate counsel on
one or more occasions, and he failed to follow through on
commitments to meet with the government.

Second, in May 2004, Mr. Brackley's office filed a notice
of appeal and informed petitioner that it would represent him on
appeal, even though petitioner had waived the appeal in the plea
agreement.[9]  After the government filed a motion to dismiss in
May 2004 on the grounds that petitioner had waived his appeal,
Mr. Brackley's office sent several letters to petitioner between
June and October 2004 informing him that a mistake had been made,
that the government's motion to dismiss the direct appeal was
likely to succeed, and that the Second Circuit had requested that
Mr. Brackley file an 'Anders' brief explaining to the court why

---

[8] According to Mr. Brackley, he "did not want, at that time, without
really understanding what Mr. LeClerc was actually saying, to respond to in a
sense that they were allegations of yours [petitioner's attorney] that he
made.  It's not my practice to do that . . . . I did not want to provide a
statement of his to you, under the form you're asking them for me."
Transcript, pp. 23-24.  Mr. Brackley further stated that he did not seek a
waiver of confidentiality and that confidentiality was not "the deciding
factor" for him. Transcript, p. 24.

[9] The notice of appeal was in fact defective since it did not contain
Mr. Brackley's signature.

the plea should not be disturbed.[10]  Mr. Brackley's office also suggested that petitioner should consider withdrawing the direct appeal (and provided petitioner with a form to do so), and instead file a habeas petition, since there were no grounds for a direct appeal and withdrawing the appeal would avoid the problem of having Mr. Brackley submit a brief against petitioner's interests, as requested by the Second Circuit.[11]

Finally, petitioner notes that the letters sent by Mr. Brackley's office after sentencing were written in English and were not translated into Spanish.[12]

While these circumstances do indeed indicate that Mr. Brackley and others in his office were deficient in their post-sentencing responsibilities to petitioner, they do not persuade me that Mr. Brackley lied at the hearing.  Mr. Brackley's performance subsequent to the sentencing does not establish that

---

[10] Petitioner also notes that Mr. Brackley failed to respond to the motion to dismiss for three months, at which point the Second Circuit issued an Order to Show Cause as to why Mr. Brackley should not be sanctioned.

[11] Petitioner did not withdraw the appeal.  He was assigned appellate counsel who argued the motion to dismiss, in part on the grounds of ineffective assistance of counsel.  The Second Circuit granted the government's motion to dismiss without prejudice to the filing of a § 2255 petition, as Mr. Brackley had recommended.

[12] In a July 19, 2007, letter, petitioner cites *U.S. v. Santiago* for the proposition that where there is reason to believe a defendant only reads Spanish, counsel must ensure that legal documents are explained or translated into Spanish.  495 F.3d 27 (2d Cir. 2007) (where there is reason to believe defendant is illiterate, counsel cannot simply mail legal documents but rather must make an effort to contact defendant and explain legal documents or have someone read the documents).  However, there is no allegation that counsel sent untranslated letters during the period leading up to the guilty plea, which is the relevant period.

he was ineffective prior to sentencing. Indeed, it was Mr. Brackley's office that suggested that petitioner file a habeas petition should he want to pursue a claim that his plea was involuntary.[13] *See* Joint Exhibit 13. I find that Mr. Brackley gave an accurate and credible recitation of the events which occurred during and up to plaintiff's guilty plea, that his performance was objectively reasonable, and that petitioner suffered no prejudice[14] as he would not have pled guilty to the indictment in any event due to his concern over what Mr. Perez would think.[15]

## II.  Extension of Time

Petitioner also argues that counsel's failure to request an extension of time to respond to the global plea offer constituted

---

[13] The letter also noted that it would be "difficult" to succeed on such a claim. Joint Exhibit 13.

[14] Even if one were to find that Mr. Brackley discussions with petitioner about his options were less than clear, since petitioner was adamant that he would not take any plea without Mr. Perez, there is no reasonable probability that the outcome would have been different had Mr. Brackley been more clear.

[15] I also note that petitioner's assertions that Mr. Brackley sent him before the Magistrate Judge without having had *any* discussions as to the nature and content of the plea agreement are not believable, especially considering the fact that Mr. Brackley was hired to negotiate a better plea deal, and are in direct contradiction to petitioner's own admissions before the Magistrate Judge. *See Garfield v. Poole,* 421 F.Supp.2d 608, 615 (W.D.N.Y. 2006) ("A trial court may fairly rely upon a defendant's sworn statements made in open court."); *Purdy v. Zeldes,* 337 F.3d 253, 259 (2d Cir. 2003) ("[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible."); *Thai v. U.S.,* 2007 WL 13416, at *6 (E.D.N.Y. 2007) (finding no ineffective assistance of counsel where defendant presented only "his own self-serving testimony" to contradict an affidavit from his defense counsel which described an "entirely credible" version of events). In fact, at the hearing on this matter, even petitioner's counsel appeared surprised by petitioner's assertions, and they cast serious doubt on all of petitioner's self-serving allegations.

ineffective assistance.  In particular, petitioner notes that the

government, in responding to Mr. Brackley's sentencing letter and

again at the sentencing hearing, informed the Court that no

extension had been requested nor had one been granted.  However,

this does not, as petitioner claims, indicate that the government

would have been willing to grant such an extension.  Rather, the

government was responding to Mr. Brackley's contention that

petitioner demonstrated a timely willingness to accept

responsibility and plead guilty and only failed to do so because

of the nature of the global plea; the point the government was

making was that a defendant who sought to demonstrate such a

willingness should at least have asked for more time.  There is

no reason to assume that the government would have extended its

offer to reduce the offense level because of a timely plea three

weeks before the trial.[16]  *See Leaks v. U.S.,* 841 F.Supp. 536,

545 (S.D.N.Y. 1994) (purely speculative claims are insufficient

to establish prejudice); *see also Eisemann v. Herbert,* 401 F.3d

102, 109 (2d Cir. 2005) ("[F]ailure to obtain a plea bargain is

not evidence of ineffective assistance of counsel when the record

does not contain evidence that one might have been offered.").

Moreover, it is equally speculative to conclude that had the

government extended the time for a plea that an agreement with

---

[16] The fact that the government consented to the first delay in the
trial date is not useful in determining whether it would grant an additional
extension, since the initial delay was due to defense counsel's late
appearance in the case.

Mr. Perez, which was necessary for the global plea, would have been reached.

Under *Strickland* courts adopt a strong presumption that "counsel's conduct falls within the wide range of professional assistance." 466 U.S. at 689.   In the present case, it is evident from Mr. Brackley's testimony that he and Mr. Perez's attorney decided that there was no benefit to be gained by requesting an extension and, in fact, believed that if it appeared they were trying to "prolong the matter without any reason, that things might get worse."[17]   Transcript, p. 29.   There is no reason for this Court to question that determination by counsel. *See, e.g., U.S. v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (counsel need not raise frivolous arguments).   Accordingly, there was neither prejudice nor deficient performance.

## Conclusion

For the reasons set forth above, petitioner's application is

---

[17] Although petitioner argues that Mr. Brackley's testimony indicated that someone from the government told him that seeking an extension would make things worse, that is not an accurate statement of the testimony.  What Mr. Brackley said was that the government's position was that "it would not get any better, and it's either take the plea or go to trial." Transcript, p. 28. Independently, Mr. Brackley and Mr. Perez's attorney concluded that they "did not want it to get any worse" and they were concerned that it might get worse if it appeared that they were trying to "prolong the matter without any reason." Transcript, pp. 28-29.  Further, contrary to petitioner's contention that Mr. Brackley and Mr. Perez's attorney never coordinated or spoke (and, accordingly, that Mr. Brackley must have been lying when he testified otherwise), there is no evidence to that effect; rather, the evidence merely demonstrates that the attorneys were forced to make different decisions with regards to taking the global plea.  In addition, the fact that the government did not call the AUSA who offered the plea bargain to testify that an extension would not have been granted does not demonstrate that there is a probability that it would have been granted.

denied.  The Clerk is directed to transmit a copy of the within

to all parties.

Petitioner is denied a certificate of appealability because

he has not made "a substantial showing of the denial of a

constitutional right," *Reyes v. Keane*, 90 F.3d 676, 680 (2d Cir.

1996).

SO ORDERED.

Dated :   Brooklyn, New York
          April 23, 2008

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge